## Goodell and wife *against* Williams.

On a certain day, *A* failed in business, and in contemplation thereof, executed and delivered an instrument in writing, whereby it purported to convey all his personal estate to *E* and four other persons, jointly, for the purposes therein after specified; to have and to hold such estate to them and their assigns forever; authorizing and empowering *W*, in behalf of the grantees, to take immediate possession of all said estate, and apply the avails, first, to extinguish the claim of *E*, and then successively, in the order specified, the several claims of the other grantees; and the balance of the estate to deliver over to *A*. By virtue of this instrument, *W* took possession of the estate so conveyed, and had it in his possession, when the plaintiff, a creditor of *A*, attached it, by process of foreign attachment. The persons named in such instrument as assignees, were creditors of *A*, and had just claims against him, of different amounts, as therein described. They had all assented to said conveyance, before the plaintiff's attachment was made. From the avails of the estate *W* has since extinguished all the debts specified therein, except a part of one, thereby exhausting the property in his hands. Held, 1. that the instrument in question, being an assignment of property made by a person in failing circumstances, with a view to his insolvency, and in trust for his creditors, was within the statute of 1828, and governed by its provisions; 2. that not having been made for the benefit of all his creditors, nor in proportion to their respective claims, it was, as against his creditors, fraudulent and void; 3. that consequently, it gave *W* no right to hold the property, as against them, and he was liable therefor in this process; 4. that if the assignment be considered as made to the assignees named therein, and *W* acting as their agent, it would not vary the result, as *W* would still have in his hands the property of *A*, under a void assignment. [One judge dissenting.]

In a process of foreign attachment, it is not necessary to shew a return of the execution against the absconding debtor, before the commencement of the *scire-facias* against the garnishee.

This was a suit, by *scire-facias*, brought to recover the

amount of a judgment rendered in an action commenced, by process of foreign attachment, against *Carpenter & Elliott.*

Upon the trial of the cause, to the jury, at the *January* term of the superior court for the county of *Windham*, in 1851, the principal question was, whether the defendant was the trustee or debtor of *Carpenter & Elliott*, or had property of theirs, in his hands, liable to be attached, on the 5th day of *August*, 1848, when the copy of the original process was left with him.

*Carpenter & Elliott*, on that day, failed in business, and in contemplation thereof, executed and delivered to the defendant an instrument in writing, the material parts of which are as follows :

" We, *Jesse Carpenter* and *William D. Elliott*, partners in business, under the name and firm of *Carpenter & Elliott*, for the consideration of one dollar, and for the purposes hereinafter specified, do give, grant, bargain, sell and convey unto *Ebenezer Elliott, Williams, Ely & Co., Sylvester Elliott,* and *Linus Elliott*, and *Coleman & Larned*, jointly, and for the purposes hereinafter specified, all the personal estate of the co-partnership of *Carpenter & Elliott*, except such as may be by law exempted from execution, meaning hereby all the cotton in the various stages of manufacture, (and other personal property and choses in action therein described,) and hereby transfer to the grantees our lease of the cotton mill, now in our occupation, and to them give power therein immediately to enter, and to use for the purpose of manufacturing goods.

" To have and to hold the above described estate to them and their assigns forever, for the following purposes, and on the following conditions.

" Whereas we are indebted to said *Williams, Ely & Co.*, by notes and books, in about the sum of 414 dollars, and to *Clemens & Larned*, by book, in about the sum of 125 dollars ; and whereas *Ebenezer Elliott* has endorsed our note for the sum of 500 dollars, and *Sylvester & Lewis Elliott* have, for our accommodation, become receipts-men in about the sum of 800 dollars, for certain goods attached ; *Nathan Williams*, Jun., is hereby authorized and empowered, in the name and behalf of the grantees, to enter into the immediate use of the said cotton factory, and take possession of all the

estate above named, and make as perfect an inventory of the <span style="float:right">*Windham,*<br>July, 1851.</span> same as may be, and may use said mill to manufacture into goods all the cotton now in process of manufacture, and collect such sums as may be due, sell and dispose of any and all of said estate, as may be best, in his belief; and the amount shall be applied to extinguish the note indorsed by *Ebenezer Elliott;* *second,* the notes and book debt of *Ely & Co.;* *third,* to pay such liabilities as may fall on *Sylvester* and *Linus Elliott,* in consequence of their being receipts-men as aforesaid; and *fourth,* to pay the debt of *Clemens & Larned;* and the balance of the estate, or cash, to deliver over to us; he keeping a full and accurate account of all the expenses and sales.

"In witness whereof, we have hereunto set our hands and seals, this 5th day of *August,* 1848.

<div style="text-align:center">

*Jesse Carpenter.*<br>
*Wm. D. Elliott.*"
</div>

By virtue of this instrument, the defendant took possession of personal estate, to the value of 1061 dollars, 10 cents, which had previously belonged to the firm, and had the same in his hands, when he was copied as trustee.

It appeared, that the persons named as assignees in said instrument, were creditors, and liable substantially as therein described. Some of them were present, at the time of the execution of said instrument; and all had knowledge of it, and assented to the same, before the plaintiff's attachment was made.

The defendant, from the avails of the property, has since extinguished and paid all the liabilities and debts mentioned in said document, except the debt of *Clemens & Larned,* upon which he has only paid the sum of 44 dollars, 81 cents, having, by his previous payments, and by his expenses and charges, for services in the management of the business, amounting to 102 dollars, 44 cents, exhausted the avails of the property.

Upon these facts, the plaintiffs claimed, that the conveyance to the defendant was void, as against them, as creditors of *Carpenter & Elliott.* The defendant claimed, that it was not void; and the court, *pro forma,* charged the jury in conformity with the defendant's claim.

It further appeared, on the trial, that the execution, upon

<div style="position:absolute;right:0">Goodell<br>*v.*<br>Williams.</div>

which demand was made of the defendant, had not been returned to the office of the clerk of the court from whence it issued, until after the issuing of the writ of *scire-facias ;* and therefore, the defendant claimed, that the plaintiffs had failed to prove a material allegation in their declaration ; and consequently, that he was entitled to a verdict. But the court charged the jury, that the time of the return of the execution was not a material fact ; and that whether returned before or after the issuing of the writ of *scire-facias*, it made no difference in respect to the plaintiffs' right to recover.

The jury returned a verdict in favour of the defendant ; and the plaintiffs thereupon moved for a new trial ; and the case was reserved for the advice of this court, and was now submitted, by counsel, without argument.

*Welch*, in support of the motion.

*T. E. Graves,* contra.

WAITE, J. The statute relating to the settlement of insolvent estates, assigned for the benefit of creditors, provides, that all assignments of property, made by any person, in failing circumstances, with a view to his insolvency, to any person or persons, in trust for his creditors, or any of them, shall, as against the person making such conveyance, be deemed and adjudged fraudulent and utterly void, unless made for the benefit of all the creditors, in proportion to their respective claims. *Stat.* 363. *c.* 4. § 66.

Was the assignment under which the defendant claimed a right to hold the property of the absconding debtors, made in violation of the provisions of this statute ? It is found, that the assignors, on the day on which it was executed, failed in business, and in contemplation thereof, made the conveyance. Upon its face, it appears not to have been made for the benefit of all the creditors. And even among those that are named in the instrument, the conveyance is not made to them, in proportion to their respective claims. Some are to be paid in full, before others are entitled to any share ; and there is no equality among them.

The conveyance therefore clearly falls within every provision of the statute, provided *a trust* was thereby created.

Although the first part of the instrument purports to convey the property to the assignees, yet the latter part explains the manner in which they were to take. *Nathan Williams*, Jun., was authorized and empowered to take possession of all the property, sell and dispose of the same, and apply the avails in payment of the several claims of the creditors, in the order specified. They having assented to the conveyance, as made, could take only in the manner therein specified—that is, through *Williams*, as trustee, to sell the property and pay the avails to them.

When he received the property, he took it merely as trustee for the creditors named; and while it remained in his hands, and was attached by the plaintiffs, it was in his possession and under his controul, as such trustee.

The conveyance being declared, by the statute, to be void, as against the plaintiffs, the creditors of the assignors, it gave the defendant no right to hold the property, as against them, and placed him in the same situation as he would have been in, had no such conveyance ever been made.

But were the conveyance to be treated as one made directly to the assignees, and *Williams* merely constituted their agent to sell and dispose of the property for them; still the result would not be materially varied. Upon that construction, the conveyance would operate as creating a trust in them, to sell and dispose of the property, and apply the avails in payment of their several claims, in the order specified in the conveyance, and account with the assignor for the balance.

*Clemens & Larned*, the creditors last to be paid, although taking a legal title jointly with the other assignees, could have no beneficial interest, until all the other claims had been satisfied; and as trustees, all would be accountable for the faithful execution of the trust. In that view of the case, the assignment would be invalid, as against these plaintiffs, and furnish no protection for the property, while in their hands, or in the hands of their agents.

Another question is presented in the motion, and that is, was it unnecessary for the plaintiffs to shew a return of the execution before the commencement of the present suit? The opinion already expressed renders a consideration of this question unnecessary. We therefore merely observe, in

*Hartford,*
*June, 1852.*

relation to this matter, that we concur in the opinion expressed by the judge in the court below.   But upon the other ground, we advise a new trial.

In this opinion the other judges concurred, except ELLSWORTH, J. who dissented.

New trial granted.